# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

# MEDFORD DIVISION

**MICHAEL A. LUJAN**,

    Plaintiff,

v.

**MIKE S. WINTERS, et al.**,

    Defendants.

Case No. 1:12-cv-02226-SI

**OPINION AND ORDER**

Michael A. Lujan, 645 Royal Avenue #213, Medford, Oregon, 97501, *pro se*.

David J. Linthorst, Office of County Counsel, Jackson County, 10 South Oakdale, Room 214, Medford, Oregon 97501. Attorneys for Defendants.

**Michael H. Simon, District Judge.**

    Plaintiff Michael A. Lujan filed *pro se* claims under 42 U.S.C. § 1983, alleging that Defendants violated his constitutional rights by acting with deliberate indifference to Mr. Lujan's medical needs and placing him in a cell that presented a substantial risk of harm while he was incarcerated at the Jackson County jail. Mr. Lujan also alleges that Defendants violated his right to adequate, effective, and meaningful access to the courts. The Jackson County Sheriff's Office employee Defendants Sheriff Mike S. Winters, Lieutenant Christine Bronson, Sergeant Dan Penland, Sergeant Joshua Aldrich, Deputy Gary Clark, and Deputy Erin Gilkison (referred to

PAGE 1, OPINION AND ORDER

collectively as "JCSO Defendants") move to dismiss all of Mr. Lujan's claims against them.[1]
Dkt. 13. This motion is granted, and the Court also dismisses the claims against the nonmoving
defendants, for the reasons that follow.

## STANDARDS

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.,* 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir 2011). All reasonable inferences from the factual allegations must be drawn in favor of the plaintiff. *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the

---

[1] A review of the file during the Court's consideration of this Motion revealed that the nonmoving defendants were inadvertently not served and have not yet appeared. Because this Court finds that Plaintiff fails to state a valid claim against any of the defendants and that an amendment would be futile, Plaintiff's claims are dismissed against all defendants and service of process against the nonmoving defendants is moot.

expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 663 (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556 (2007)).

A court must liberally construe *pro se* complaints and motions from prisoners. *United States v. Seesing*, 234 F.3d 456, 462 (9th Cir. 2000). "A *pro se* litigant must be given leave to amend his or her complaint unless it is 'absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988) (quoting *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir.1987), *superseded on other grounds by statute as stated in Lopez v. Smith*, 203 F.3d 1122 (9th Cir.2000)).

A complaint filed *in forma pauperis* may be dismissed at any time, including before service of process, if the court determines that:

> (A) the allegation of poverty is untrue; or
>
> (B) the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2).

## FACTUAL BACKGROUND

### A.  Facts Relating to the Claims of Inadequate Access to the Courts

On May 30, 2012, Mr. Lujan was arrested and lodged at the Jackson County jail. Mr. Lujan believed his arrested to be unlawful and requested access to the law library to assist in preparing a motion to suppress evidence he believed was obtained following an illegal search and seizure. Mr. Lujan discovered that the law library computer at the Jackson County jail was inoperable and he requested legal assistance on June 15, 2012. Jail personnel responded to Mr. Lujan's request that because he had an attorney, the jail did not need to provide him access

PAGE 3, OPINION AND ORDER

to the law library. On June 20, 2012, Mr. Lujan filed a grievance relating to the deficiencies in the law library. Jackson County personnel responded that they were waiting for a legal opinion from County Counsel, but that they had been providing Mr. Lujan with legal cases as he requested them and were working on fixing the law library computer.

Mr. Lujan requested numerous cases over the next two months and received copies of them. He also requested a copy of a "CEB" book on Oregon criminal procedure from the Jackson County Law Library and was informed that the Law Library would not allow the jail to check out any "CEB" book.

On August 17, 2012, Mr. Lujan filed another grievance relating to alleged deficiencies in the law library. In response, Jackson County Circuit Court Judge Lorenzo A. Mejia appointed the Southern Oregon Public Defender's office for the limited purpose of assisting Mr. Lujan in accessing and collecting legal research materials.

Mr. Lujan was represented by counsel and on June 12, 2012, he requested his attorney research and file a motion to suppress the evidence he believed was illegally obtained. His attorney at that time declined to pursue the requested motion to suppress. A different attorney representing Mr. Lujan filed the motion to suppress sought by Mr. Lujan on November 1, 2012. Before the motion to suppress was decided by the state court, Mr. Lujan pled guilty to charges of Robbery in the Second Degree and Burglary in the First Degree on November 27, 2012. Mr. Lujan signed his complaint in this civil lawsuit under Section 1983 on the same day.

**B. Facts Relating to the Eighth Amendment Claims**

On or about June 13, 2012, Mr. Lujan complained to a Jackson County jail doctor (as alleged, "Dr. Cory"), about severe muscle spasms and chronic back pain caused by bone spurs, compression fractures, and degenerative disc disease. Dr. Cory prescribed four weeks of medication for the muscle spasms but did not prescribe pain medication, explaining that the jail

PAGE 4, OPINION AND ORDER

did not treat chronic complaints. When Mr. Lujan's prescription ran out, he requested additional medications for his degenerative disc disease. Jail medical personnel stated that Mr. Lujan's medical records did not indicate that he had degenerative disc disease and Dr. Cory declined to prescribe additional medication.

Mr. Lujan requested his previous medical records be obtained. His 2009 MRI report states that: "There is early hypertrophic lipping manifested by anterior and lateral spurs; there are no compression fractures or subluxations. Transverse processes, disc spaces and sacroiliac joints appear unremarkable." Dkt. 2-1, at 56.

On or about June 22, 2012, Mr. Lujan's tooth was pulled and he was prescribed Ibuprofen. On June 27 and 28, 2012, Mr. Lujan requested pain medication. Mr. Lujan stated that the Ibuprofen was irritating his gastrointestinal bleed. Dr. Cory denied additional pain medication.

On or about July 31, 2012, Mr. Lujan filed a grievance complaining that a doctor had not seen him in three weeks. He was seen by a doctor on August 9, 2012, and was prescribed Gabapentin. Mr. Lujan requested different pain medication on August 22, 23, 27, September 7 and 19, 2012. Each request was responded to, and it was explained that under the Con-Med protocol, only certain medications could be prescribed, and because Mr. Lujan could not take Ibuprofen or Tylenol, Gabapentin was the only remaining medication allowed under the medical protocol that he could be prescribed. On September 2, 2012, Mr. Lujan filed a grievance relating to his back pain and medications, and jail personnel responded that Dr. Cory prescribed Gabapentin for Mr. Lujan's pain and that Dr. Cory did not find another MRI to be medically necessary. On October 24, 2012, Mr. Lujan saw Dr. Cory for his back pain and was prescribed two weeks of muscle relaxants.

On October 1, 2012, Mr. Lujan submitted an inmate request form requesting to be moved from his cell because he was a *pro se* litigant, had to write a great deal, and had a back condition that made writing on the floor or while standing painful. Jail personnel responded that Mr. Lujan had demonstrated a lack of regard for jail rules, but that if he did not receive any minor or major infractions between the time of his request and October 23, 2012, the jail would consider moving him to another cell. Mr. Lujan then filed a grievance relating to this issue on October 5, 2012, seeking to be moved to one of two specific cells that had a table and chair. Jail personnel responded that Mr. Lujan had been housed in one of the cells he was requesting, but that he violated jail rules and received contraband from other inmates so he was moved to a separation hard cell, in which he continued to break rules and receive contraband from other inmates. Mr. Lujan's request to move to a different cell was denied.

## ANALYSIS

The JCSO Defendants argue that Plaintiff's claims should be dismissed because he has failed to state a claim under 42 U.S.C. § 1983 and because the JCSO Defendants are entitled to qualified immunity. Because the Court finds that Mr. Lujan has not stated a claim that his constitutional rights were violated and that the deficiencies cannot be cured by an amendment, the Court does not reach the issue of qualified immunity.

### A. Mr. Lujan Fails to State a Claim that His Constitutional Right to Access to the Courts was Violated

To state a claim under Section 1983, "a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law." *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006). Here, Mr. Lujan fails to sufficiently allege that a right secured by the Constitution or laws of the United States was violated.

PAGE 6, OPINION AND ORDER

Inmates have a constitutional right to adequate, effective, and meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). This "fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id*. at 828. "*Bounds* requires only adequate law libraries *or* adequate assistance from persons trained in the law, not both." *United States v. Janis*, 820 F. Supp. 512, 515 (S.D. Cal. 1992) *aff'd*, 46 F.3d 1147 (9th Cir. 1995) (quotations and citations omitted). Here, the allegations by Mr. Lujan show that he had both.

Mr. Lujan had access to the law library and its books. He did not have access to a working computer in the law library, but nearly all of the legal research materials he requested were provided to him by jail personnel. Further, when one of the materials he requested was not able to be made available to him, the Southern Oregon Public Defenders' office was appointed to assist Mr. Lujan in accessing and collecting legal research materials. Mr. Lujan does not allege that he was unable to obtain any legal research materials after counsel was appointed to him.

Mr. Lujan also had the assistance of attorneys. He alleges that in June 2012 he sent a letter to his attorney, Robert Abel, requesting Mr. Abel research and file a motion to dismiss. He further alleges that Mr. Abel responded that he did not intend to file the requested a motion to suppress. Mr. Lujan then decided to pursue the motion *pro se*. As noted above, counsel was appointed to assist Mr. Lujan with legal research while he was pursuing the motion to suppress. Additionally, Mr. Lujan attached to his complaint a copy of the motion to suppress filed by his attorneys Kellington & Kellington. Mr. Lujan does not allege when Kellington & Kellington began representing him, but the exhibits to Mr. Lujan's complaint show that at some point Mr. Lujan was represented by Kellington & Kellington.

Even if Mr. Lujan could allege that he did not receive constitutionally adequate assistance from persons trained in the law or access to an adequate law library, that is insufficient by itself to allege a cognizable claim of constitutionally inadequate access to the court. "Because *Bounds* did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). To assert a claim as to the right vindicated by *Bounds*, "the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Id*.

Here, the legal claim Mr. Lujan alleges he was not able to pursue was the motion to suppress. Contrary to that allegation, however, Mr. Lujan attaches to the complaint the motion to suppress that was filed by his attorney on November 1, 2012. The motion attached to the complaint is detailed, thorough, and includes the precise legal argument Mr. Lujan is now arguing that he was not able to make because of his constitutionally deficient access to a law library or legal assistance. Mr. Lujan, therefore, has not and cannot show that his ability to file the motion to suppress was in any way hindered.

**B.  Mr. Lujan Fails to State a Claim Under the Eighth Amendment**

Mr. Lujan's Complaint asserts one cause of action that relates to the medical care provided (or refused to be provided) to Mr. Lujan and one cause of action that he was improperly placed in a cell without a table or chair. Mr. Lujan claims his Fourteenth Amendment rights were violated because: (1) jail officials provided inadequate medical care for his back injury, tooth abscess, and gastrointestinal bleed; and (2) the lack of a table and chair in his cell posed a substantial risk to his health and safety. Compl. ¶¶ 43-82. Dkt. 2.

The Supreme Court holds that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). The Eighth Amendment prohibits "cruel and unusual punishments," and, therefore, "places restraints on prison officials." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). It also places duties upon prison officials to provide humane conditions of confinement, including, "adequate food, clothing, shelter, and medical care, and . . . reasonable measures to guarantee the safety of the inmates." *Id.* (quotations and citation omitted). Thus, Mr. Lujan's alleged claims arise under the Eighth Amendment and not the Fourteenth Amendment. Although Mr. Lujan does not allege a cause of action under the Eighth Amendment, this Court interprets *pro se* complaints liberally and construes Mr. Lujan's claims under the Fourteenth Amendment to be claims under the Eighth Amendment.

**1.  Medical Care**

The government has an obligation "to provide medical care to those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Deliberate indifference to serious medical needs constitutes unnecessary and wanton infliction of pain, which is proscribed by the Eighth Amendment. *Id.* at 104. In this context, however, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.* at 106. In order to state a claim relating to medical care under Section 1983, a prisoner must "allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* Allegations that a medical professional was negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. *Id*.

To establish an Eighth Amendment violation under Section 1983 a prisoner must satisfy "both the objective and subjective components of a two-part test." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002)). First, the plaintiff must show that the jail official deprived him of the "minimal civilized measure of life's necessities." *Id*. (quotations and citation omitted). Second, he must demonstrate that the jail official "acted with deliberate indifference in doing so." *Id*. (quotations and citation omitted). Under this standard, for example, a medical decision to decline ordering an x-ray is not a constitutional violation, but is a matter for medical judgment. *Estelle*, 429 U.S. at 107.

Here, Mr. Lujan alleges that he was provided insufficient medical care for his chronic back pain because he was not prescribed the particular medications he desired. Mr. Lujan received medical care throughout his incarceration at the Jackson County jail. He was seen by Dr. Cory and nurses on numerous occasions. Mr. Lujan received a response from Jackson County Corrections Department officers or medical personnel regarding each of his requests for medical care and associated grievance reports.

With respect to his back, Mr. Lujan was seen repeatedly by nurses and Dr. Cory. Mr. Lujan's MRI indicated only bone spurs, and Dr. Cory did not believe an additional MRI was medically necessary. Based on Mr. Lujan's representations of his symptoms, he was provided with non-narcotic pain medication and a four-week, and later an additional two-week, course of muscle relaxants. County officials refused to provide him with narcotics for pain, but offered non-narcotic options, including Gabapentin. No evidence in the record suggests that Mr. Lujan was, with deliberate indifference, deprived of "life's necessities." At most, Mr. Lujan claims his back pain was treated negligently and should have had a more aggressive treatment, but negligent treatment does not support an Eighth Amendment claim. *Estelle*, 429 U.S. at 106-07.

With respect to his request for different pain medication based on his chronic pain, the failure to administer narcotic pain medication in such circumstances does not rise to the level of a constitutional infringement—Mr. Lujan was provided with non-narcotic pain medications, and narcotics in these circumstances were not a life necessity. *See e.g., Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996) (failure to provide local anesthetic for pain does not suffice for an Eighth Amendment claim); *Salvatierra v. Connolly*, No. 09 Civ. 3722 (SHS) (DF), 2010 WL 5480756 at *20 (S.D.N.Y. Sept. 1, 2010) (providing ibuprofen instead of Percocet does not deprive an inmate of one of life's necessities); *Fields v. Roberts*, No. 1:06-cv-00407-AWI-YNP, 2010 WL 1407679 at *4 (E.D. Cal. April 7, 2010) (refusing to prescribe narcotic pain medication even when an outside doctor recommended it is a difference in medical opinion on the proper course of treatment and is not a basis for an Eighth Amendment claim).

Jail officials have broad discretion to determine medical care and an inmate is not entitled to the treatment he wants. *Tolbert v. Eyman*, 434 F.2d 625, 626 (9th Cir. 1970). Differing treatment options are at the discretion of the medical professionals and even if the decisions relating to Mr. Lujan's pain medication were medically erroneous (which is not clear from the allegations in the complaint), they cannot be characterized as a disregard for an excessive risk of inmate health. *Snipes*, 95 F.3d at 591; *see also Estelle*, 429 U.S. at 107. The facts as alleged by Mr. Lujan, therefore, do not support a finding of "deliberate indifference" to a serious medical need with respect to Mr. Lujan's pain medication.

Mr. Lujan's complaint consists of detailed factual allegations and attaches the relevant medical records. The Court finds that it is clear that an amendment could not cure the deficiencies in the complaint relating to the alleged violations of the Eighth Amendment as a result of the medical care Mr. Lujan received.

### 2. Jail Accommodation

Mr. Lujan also alleges that defendants were indifferent to his needs in placing him in a cell without a table and chair. Compl. ¶¶ 75-82. Dkt. 2. Deliberate indifference requires that the prison or jail official "knows of and disregards an excessive risk to inmate health and safety." *Toguchi*, 391 F.3d at 1057 (quoting *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1187 (9th Cir. 2002)). Under this standard, the official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Toguchi*, 391 F.3d at 1057. If a prison of jail official knows the facts but does not draw the inference of risk, no matter how severe the risk and even if the official should have known about the risk, the official does not violate the Eighth Amendment. *Toguchi*, 391 F.3d at 1057.

Here, Mr. Lujan was placed in a cell with a table and chair, but he violated the rules and was moved to a more restrictive cell. To succeed in his Eighth Amendment claim on the matter, Mr. Lujan must show that jail officials were both aware of a substantial risk of serious harm and deliberately disregarded it in assigning him a cell without a table and chair. Although Mr. Lujan complained to jail officials about his back pain and the burden writing without a desk created, his allegations do not support an inference that the jail officials knew that keeping him in a cell without a table created a substantial risk of serious harm. As pled by Mr. Lujan and demonstrated in the documents attached to the complaint, the determinations made by the jail medical personnel did not indicate a severe back injury or significant pain, and thus the facts alleged do not support that the jail officials knew the cell assignment created an excessive risk of serious harm to Mr. Lujan's back. Nor has Mr. Lujan pled any facts showing that as a result of the cell assignment he suffered serious harm.

Additionally, placing Mr. Lujan in a cell without a table and chair did necessarily violate his constitutional rights. The United States Supreme Court has held that "[s]ubjecting the day-to-day judgments of prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration." *Turner v. Safley*, 482 U.S. 78, 89 (1987). Thus, a "regulation impinging on inmates' constitutional rights 'is valid if it is reasonably related to legitimate penological interests.'" *Lewis*, 518 U.S. at 361 (quoting *Safley*, 482 U.S. at 89). Here, in denying Mr. Lujan's inmate request and inmate grievance, jail officials stated that Mr. Lujan was moved out of the cell with the table because he violated jail rules and received contraband from other inmates. Placing Mr. Lujan in a more restricted cell for violating jail rules is reasonably related to a legitimate penological interest and is, therefore, valid. The Court also finds that it is clear that an amendment would not cure the deficiencies in Mr. Lujan's claim that his constitutional rights were violated for his placement in a more restricted cell after he violated jail rules.

## CONCLUSION

The JCSO Defendants' motion to dismiss (Dkt. 13) is GRANTED and all claims against them are dismissed. The Court also finds that Mr. Lujan fails to state a claim upon which relief can be granted and dismisses all claims against the nonmoving defendants under 28 U.S.C. § 1915(e)(2). The Court further finds that the pleading deficiencies could not be remedied by an amendment. The matter is dismissed without leave to amend.

**IT IS SO ORDERED**.

DATED this 14th day of May, 2013.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge